# 14-1546

## United States Court of Appeals for the Second Circuit



MAXIAM DEAN,

*Plaintiff-Appellant,*

v.

UNIVERSITY AT BUFFALO SCHOOL OF MEDICINE AND BIOMEDICAL SCIENCES, STATE UNIVERSITY OF NEW YORK, MICHAEL E. CAIN, M.D., Individually and in his official capacity as Dean of the University at Buffalo School of Medicine and Biomedical Sciences, NANCY NIELSEN, M.D., Ph.D., Individually and in her official capacity as Senior Associate Dean of the University at Buffalo School of Medicine and Biomedical Sciences,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK (Buffalo)

## BRIEF OF PLAINTIFF-APPELLANT

LAW OFFICE OF DAVID J. SEEGER
*Attorney for Plaintiff-Appellant*
69 Delaware Avenue
Buffalo, New York 14202
(716) 856-1536
*davidjseegerpc@gmail.com*

DICK BAILEY SERVICE (212) 608-7666 (718) 522-4363 (516) 222-2470 (914) 682-0848 Fax: (718) 522-4024
1-800-531-2028 - Email: appeals@dickbailey.com -Website: www.dickbailey.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT…………………………………………    1

STATEMENT OF SUBJECT MATTER
AND APPELLATE JURISDICTION……………………………………    1

STATEMENT OF ISSUES PRESENTED FOR REVIEW……………...    2

STATEMENT OF THE CASE………………………………………...    3

STATEMENT OF FACTS…………………………………………    3

ARGUMENT…………………………………………………………...    9

    I.      STANDARD OF REVIEW…………………………………    9

    II.    DEFENDANTS DO NOT ENJOY ELEVENTH
        AMENDMENT IMMUNITY AS TO PLAINTIFF'S
        FIRST CLAIM FOR RELIEF ALLEGING
        VIOLATIONS OF §504 OF THE
        REHABILITATION ACT OF 1973………………………    11

    III.    DRS. CAIN AND NIELSEN DO NOT ENJOY
        ELEVENTH AMENDMENT IMMUNITY AS TO THE
        BRANCH OF PLAINTIFF'S ADA TITLE 2 CLAIM
        SEEKING INJUNCTIVE RELIEF IN THE FORM OF
        REINSTATEMENT, AND DEFENDANT STATE
        DOES NOT ENJOY ELEVENTH AMENDMENT
        IMMUNITY AS TO THE BRANCH OF PLAINTIFF'S
        ADA TITLE 2 CLAIM SEEKING MONEY DAMAGES
        BECAUSE THAT CLAIM FITS WITHIN THE *GARCIA*
        EXCEPTION…………………………………………….    12

    IV.    PLAINTIFF'S REHABILITATION ACT §504
        AND ADA TITLE 2 CLAIMS SHOULD BE
        REINSTATED…………………………………………….    14

i

V.    PLAINTIFF'S FOURTEENTH AMENDMENT
      PROPERTY INTEREST-BASED PROCEDURAL
      DUE PROCESS CLAIM SHOULD BE REINSTATED…..    19

CONCLUSION……………………………………………………    28

## TABLE OF AUTHORITIES

*Alexander v. SUNY at Buffalo*, 932 F.Supp. 2d 437, 443
(WDNY 2013)………………………………………………………….11

*Alzawahra v. Albany Medical Center,* 2013 U.S. App. LEXIS
24168 at *2 (2d Cir., decided 12/5/13)…………………………………10

*Astrin v. Maharam Fabric Corp.*, Civ. No. 11-4482 (EDNY, decided
Jan. 9, 2013)…………………………………………………………15

*Bartlett v. NYS Board of Law Examiners*, 156 F.3d 321 (2d Cir.,
1998)…………………………………………………………………16

*Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356 (2001)….13

*Board of Curators of University of Missouri v. Horowitz*, 435
U.S. 78 (1978)……………………………………………………….. 20

*Brady v. Wal-Mart Stores, Inc.,* 531 F.3d 127 (2d Cir., 2008)…………15

*Branum v. Clark*, 927 F.2d 698 (2d Cir., 1991)………………………. 20

*Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.,
1994)…………………………………………………………………15

*Clements v. County of Nassau*, 835 F.2d 1000 (2d Cir. 1987)………… 23

*Dube v. SUNY*, 900 F.2d 587, 595 (2d Cir., 1990)……………………..13

*Farina v. Branford Board of Education,* 458 Fed. Appx. 13,
(2d Cir., 2011)………………………………………………………10

*Garcia v. SUNY Health Sciences Center,* 280 F.3d 98, 107 (2d Cir., 2001)………………………………………………………………11,12,15

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir., 2009)…………………………13

*Holmes v. Poskanzer*, 2007 U.S. Dist. LEXIS 3216…………………….. 20

*Ikpeazu v. University of Nebraska*, 775 F.2d 250 (8th Cir., 1985)……. 23

*Jackan v. N.Y. State Dep't of Labor,* 205 F.3d 562, 566 (2d Cir., 2000)……………………………………………………………14

*Marino v. City University of New York*, 2014 U.S. Dist. LEXIS 64516 at *16-*17 (EDNY, filed May 9, 2014)…………………………11

*Mathirampuzha v. Potter*, 548 F.3d 70, 74 (2d Cir., 2008)……………9

*McBride v. Bic Consumer Products Man'g Co., Inc.*, 583 F.3d 92, 96 (2d Cir., 2009)……………………………………………………9,14

*McElwee v. County of Orange,* 700 F.3d 635, 642 (2d Cir., 2012)……15

*Olsson v. Board of Higher Education*, 49 NY2d 408 (1980)…………. 20

*Rothchild v. Grottenthaler*, 907 F.2d 286 (2d Cir., 1990)……………. 16

*United States v. Georgia*, 546 U.S. 151, 159 (2006). ………………… 13

*University of Michigan v. Ewing*, 474 U.S. 214……………………… 22

*Vermont Teddy Bear Co., Inc. v. 1-800 Bear Gram Company*, 373 F.3d 241, 244 (2d Cir., 2004)…………………………………..10

*Youngberg v. Romeo*, 457 U.S. 307 (1982)…………………………… 22

## PRELIMINARY STATEMENT

This appeal is taken from a Decision And Order of the Hon. William M. Skretny, Chief Judge of the United States District Court, Western District, and from the resultant Judgment.  SA1-20 and SA21.  Appellant's counsel is unaware of the Decision, filed March 31, 2014, and Judgment, also filed March 31, 2014, having been reported, and therefore no citation is furnished.

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The basis for subject matter jurisdiction in the United States District Court is 28 U.S.C. §1331 ("federal question") and 28 U.S.C. §1343(a)(4), conferring original jurisdiction upon the Court of any civil action to recover damages, or to secure equitable relief, under any Act of Congress providing for the protection of civil rights.

Appellate jurisdiction is proper pursuant to 28 U.S.C. §1291 since appeal is taken from a judgment granting Defendants' motion for summary judgment, pursuant to Fed.R.Civ.P. Rule 56, dismissing the Complaint in its entirety and disposing of the entire action.  A Notice of Appeal was timely filed on April 29, 2014.  SA22.

# STATEMENT OF ISSUES PRESENTED
# FOR REVIEW

Of the five claims for relief presented in the Complaint (A9-A29) Plaintiff appeals the dismissal of the first three, which are premised on §504 of the Rehabilitation Act of 1973, Title 2 of the Americans With Disabilities Act and a violation of the Due Process Clause set forth in the Fourteenth Amendment to the United States Constitution.

There are three issues presented for review.  First, whether Eleventh Amendment immunity bars Plaintiff's claims against the State Defendants, i.e., the State University and Drs. Cain and Nielsen in their official capacities, on the Rehabilitation Act and ADA claims.

The second issue presented for review is whether the District Court correctly held that there is no plausible inference that Defendants discriminated against Plaintiff or deprived him of an opportunity or benefit because of a disability, and whether Plaintiff otherwise presented proof sufficient to withstand Defendants' summary judgment motion seeking dismissal of the Rehabilitation Act and ADA claims.

The third issue is whether the Court correctly held that Defendants were entitled to summary judgment dismissing Plaintiff's third claim for relief that Defendants Cain and Nielsen, acting under color of law and in their individual

capacities, deprived him of property without the Due Process of Law in violation of the Fourteenth Amendment.

## STATEMENT OF THE CASE

Plaintiff commenced this action in the United States District Court, Western District of New York by filing a Complaint on March 12, 2010.  A9-A29.

Defendants filed an Answer on August 6, 2010.  A30-A35.  Following the completion of discovery, Defendants moved for summary judgment.  A36-37.

Defendants filed supporting papers, including a Statement of Undisputed Facts required under Local Rule 56.1.  A38-A50.  Plaintiff filed opposing papers, including his own declaration that included a counterstatement, with supporting documents, to enumerated factual assertions of Defendants Statement of Undisputed Facts.  A250-256.  Defendants filed a reply declaration (A346-A350) and the District Court, by Decision And Order filed March 31, 2014 granted Defendants' motion for summary judgment.  SA1-SA20.  The resultant Judgment, also filed March 31, 2014, dismissed the Complaint in its entirety.  SA21.  Plaintiff timely appealed.  SA22.

## STATEMENT OF FACTS

As of May, 2007 Plaintiff was a student enrolled in the M.D. degree program at Defendant University at Buffalo (part of the State University of New York system) in good standing.  As noted in the District Court Decision, Plaintiff

3

had timely completed the Phase I curriculum, i.e., the first and second years of

medical school.  SA3.  While he had received Unsatisfactory grades in two

courses, he re-took ("remediated") those courses and received a grade of

Satisfactory in both.  A234-235.  He had received two Honors grades and one High

Satisfactory grade.  A235.  His grades were much better than those that would

trigger a Phase I Committee review as to the possibility of academic dismissal

under UB Med's Academic Status Policies.  A235, A269.

There were two additional requirements in order for Plaintiff to have

progressed to his third year of medical school.   The first was passing his Year 2

Clinical Competency Examination, which he accomplished in the Spring semester,

2006.  A250, A326-327.  The second obligation was to pass the Step 1 exam

formerly known as the "USMLE" (United States Medical Licensing Examination)

administered by the National Board of Medical Examiners (NBME).

Under UB Med's Academic Status Policies, all students were obligated to

pass the Step 1 exam in no more than three tries, within one academic year.  A270.

The Academic Status Policies infer that a study leave is afforded with respect to

sitting for the Step 1 exam the first time, without specifying the length.  A270.  The

policies specify that after a failure on the first attempt, students will be afforded

eight weeks to prepare for the second taking of the Step 1 exam.  *Ibid.*  If a student

fails the Step 1 exam on the second attempt, they are afforded additional time to

prepare and sit for the exam on the third and final attempt.  *Ibid.*  Eddie L. Hoover, M.D., a faculty member at UB Med, furnished a declaration that it was longstanding policy at the School of Medicine that students taking the Step 1 exam, whether on their first, second or third attempts, were afforded on each occasion a study period between six and eight weeks in length.

Plaintiff failed the Step 1 exam on his first and second attempts.  In February, 2007, in advance of his second attempt, Plaintiff requested an extended study leave, citing "depression, stress and anxiety."  SA5.  After Plaintiff failed the Step 1 exam on his second attempt, he was advised that he was to sit for his final attempt no later than May 31, 2007, or face dismissal from medical school.  SA5.

Plaintiff, however, was unable due to medical disabilities from effectively and competently studying.  He suffered from low energy, inability to concentrate, sleep disturbance, being mostly bedridden, and having difficulty in even eating and maintaining hygiene.  A237.  He sought professional diagnosis and treatment, initially consisting of a crisis evaluation session with Andrea Greenwood, Ph.D., a psychologist at the University at Buffalo (SUNY) Counseling Services.  A237, 297-298.  She reported her diagnosis of depression to Defendants by way of a May 17, 2007 letter report.  A297-298.  She had recommended that Plaintiff seek "psychopharmacological treatment in addition to using counseling for support."  *Ibid.*  Also on May 4, 2007 Plaintiff sought medical evaluation by his treating

5

internist, Dwight Lewis, M.D., who recommended medication and "a medical leave of absence from medical school for three month[s] due [to] situational depression." A285-286, 299-300. While Plaintiff balked at taking medication, he agreed to doing so, beginning May 18, 2007. A239, 299-300. When Plaintiff presented Dr. Lewis's prescription for a 3 month leave of absence, Defendant Nielsen, on May 11, 2007, advised Plaintiff that the documentation was insufficient. A238. Plaintiff followed up with submitting the Dr. Greenwood report (A297-298) and the May 21, 2007 Dwight Lewis, M.D. letter (A299-300). He had also arranged for an examination by a psychiatrist, Calvert Warren, M.D., employed at the University at Buffalo Counseling Services. On May 31, 2007 Dr. Warren issued a letter report furnished to Defendants that as of that date Plaintiff had experienced only "some mild improvement" since starting Lexapro on May 18, 2007, and was continuing to have "the neuro-vegetative signs and symptoms of major depression" including "insomnia and poor concentration, which adversely affect academic performance." A241, 308-309.

Prior to that date, Plaintiff had requested David Holmes, M.D., a member of UB Med's Leave of Absence Committee, that the Committee recommend approval of a three month leave of absence, with the intention that at the end of the leave Plaintiff would have to take the Step 1 exam for the third occasion. A239, 295-296. The Leave of Absence Committee recommended only a medical leave of

absence through June 30, 2007, on the reasoning that a leave of absence should not be afforded for study, but only for retaking the Step 1 exam. A302. Dr. Nielsen described the Plaintiff's request to the Leave of Absence Committee as one that "the committee Chairman should not have allowed . . ." A317. Presumably, this was because Dr. Cain, via Dr. Nielsen, had already (on May 16, 2007) informed Plaintiff that UB Med "will allow no more extensions, and that you must take the exam by 5/31, as previously instructed." A238, 291-292.

Defendants, in their summary judgment motion papers, did not place in issue whether Plaintiff suffered from a disability triggering the protections of Title 2 of the ADA and/or §504 of the Rehabilitation Act. Plaintiff described his disability in detail. This included a description as to how, over time and particularly beginning July 21, 2007, his Lexapro medication resolved his symptoms of depression and allowed him to meet his academic obligations. Plaintiff also described how the medication had side effects that in their own right triggered disabilities, but were not of a nature that interfered with his ability to successfully perform as a student at medical school. A248-250.

On June 7, 2007 Defendant Michael E. Cain, M.D., the Dean of the School of Medicine, notified Plaintiff that he was being afforded "an extension of the deadline for taking the USMLE Step 1 Exam until July 28, 2007," and that "[t]here will be no further extensions regardless of reason." Dr. Francis, who ran the PASS

Board Prep Program in Champaign, IL, approximately one week before the July 28, 2007 deadline, called on behalf of Plaintiff asking that more time be given to Plaintiff to prepare for the Step 1 exam; however, the Dean's Office did not return the call and Defendant Nielsen notified Plaintiff via e-mail that the Dean's Office would not communicate with anyone other than himself about this matter and that the deadline of July 28, 2007 was final.  A317.  In mid-August, 2007, Plaintiff registered to take the Step 1 exam on August 31, 2007, however, the NBME was notified by UB Med that Plaintiff had been dismissed and was no longer a student in good academic standing.  A244.  Thus, Plaintiff could not take the exam.  *Ibid.*

Plaintiff was dismissed from medical school and is therefore ineligible to transfer to or apply for admission to any accredited medical school within the United States.  A247.  However, in 2010, Plaintiff obtained a sponsorship from a Caribbean medical school which allowed him to take the Step 1 USMLE exam, and he did so.  He passed the Step 1 USMLE exam in 2010: obtaining a score of 207, which is 19 points higher than the minimum passing score of 188 that was in effect in 2010 (in 2007 the passing score was 182).  A247-248.

8

# ARGUMENT

## POINT I

## STANDARD OF REVIEW

Because this is an appeal from the District Court's grant of summary judgment to Defendants, there is a *de novo* standard of review.  *McBride v. Bic Consumer Products Man'g Co., Inc.*, 583 F.3d 92, 96 (2d Cir., 2009).

> Summary judgment is warranted only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."

*McBride, ibid,* quoting Fed.R.Civ.P. 56(c) and citing *Mathirampuzha v. Potter*, 548 F.3d 70, 74 (2d Cir., 2008).

The grounds articulated by a defendant on its motion for summary judgment are relevant and may act as a limitation because a movant must make a threshold showing:

> We review *de novo* a district court's grant of summary judgment, with the view that "[s]ummary judgment is appropriate only if the moving party shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law."  *Miller v. Wolpoff & Abramson*, *L.L.P.,* 321 F.3d 292, 300 (2d Cir., 2003).

9

*Farina v. Branford Board of Education,* 458 Fed. Appx. 13 (2d Cir., 2011).

This showing required of a defendant who moves for summary judgment has been described as follows:

> "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Katrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Once the movant has satisfied this burden, the burden of production shifts to the non-movant to bring forth evidence showing that a genuine factual dispute exists . . .

*Alzawahra v. Albany Medical Center,* 2013 U.S. App. LEXIS 24168 at *2 (2d Cir., decided 12/5/13). Similarly:

> It is the movant's burden to show that no genuine factual dispute exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

*Vermont Teddy Bear Co., Inc. v. 1-800 Bear Gram Company*, 373 F.3d 241, 244 (2d Cir., 2004). In the Argument below, Appellant points out certain fact and legal issues Defendants chose not to raise in support of their motion for summary judgment.

10

## POINT II

## DEFENDANTS DO NOT ENJOY ELEVENTH AMENDMENT IMMUNITY AS TO PLAINTIFF'S FIRST CLAIM FOR RELIEF ALLEGING VIOLATIONS OF §504 OF THE REHABILITATION ACT OF 1973

The acts comprising discrimination of which Plaintiff complains occurred in the year 2007, long after this Court decided *Garcia v. SUNY Health Sciences Center of Brooklyn*, 280 F.3d 98 (2d Cir., 2001). This is significant because prior to the *Garcia* decision the State's acceptance of Federal funds did not constitute a waiver of sovereign immunity, for the reasons explained in the *Garcia* decision, while continued acceptance and receipt of Federal funds after the date of the *Garcia* decision effectuated a waiver of sovereign immunity as to Rehabilitation Act §504 claims. *Marino v. City University of New York*, 2014 U.S. Dist. LEXIS 64516 at *16-*17 (EDNY, filed May 9, 2014). It is settled that the State and its SUNY system continued to accept Federal funds post-*Garcia,* so that Rehabilitation Act claims are not barred by the Eleventh Amendment. *Ibid* at *19-*20, and authorities cited therein, including *Alexander v. SUNY at Buffalo*, 932 F.Supp. 2d 437, 443 (WDNY 2013) observing the State's admission that SUNY has continued to accept Federal funding and holding that Eleventh Amendment immunity therefore did not bar Rehabilitation Act §504 claims.

11

## POINT III

**DRS. CAIN AND NIELSEN DO NOT ENJOY
ELEVENTH AMENDMENT IMMUNITY AS
TO THE BRANCH OF PLAINTIFF'S ADA TITLE 2
CLAIM SEEKING INJUNCTIVE RELIEF IN THE
FORM OF REINSTATEMENT, AND DEFENDANT
STATE DOES NOT ENJOY ELEVENTH AMENDMENT
IMMUNITY AS TO THE BRANCH OF PLAINTIFF'S
ADA TITLE 2 CLAIM SEEKING MONEY DAMAGES
BECAUSE THAT CLAIM FITS WITHIN THE *GARCIA* EXCEPTION**

The Complaint's prayer for relief includes a demand against Defendant Cain that Plaintiff be reinstated to the University at Buffalo School of Medicine and permitted to complete his M.D. degree program requirements, and against all Defendants for injunctive relief restraining continued violations of the Rehabilitation Act and ADA.  A28-29.  Defendants' Answer, as a fourth defense, asserted:

> Except to the extent that plaintiff is seeking injunctive relief pursuant to the ADA, the plaintiff's ADA claim is barred by the Eleventh Amendment to the United States Constitution.

A32.  The Memorandum of Law, District Court Document 25, p. 7, implicitly asserted Eleventh Amendment under *Garcia v. SUNY Health Sciences Center*, 280 F.3d 98 (2d Cir., 2001) as to Plaintiff's "suit for damages" and "claim for monetary damages."  While the Eleventh Amendment is not expressly mentioned, it is clear that the argument is that Plaintiff must satisfy what Defendants described as "the

12

heightened standard" of *Garcia*, *ibid* at 107, which pertains to claims for monetary damages only.

Therefore, Plaintiff's claim for prospective injunctive relief against Defendants fits within the *Ex Parte Young* exception to Eleventh Amendment immunity and may properly proceed as to the alleged violations of Title 2 of the ADA and Rehabilitation Act §504 (and, for that matter, 42 U.S.C. §1983). *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir., 2009), *Dube v. SUNY*, 900 F.2d 587, 595 (2d Cir., 1990), *Marino v. CUNY, supra*, 2014 U.S. Dist. LEXIS 64516 at *23-*26.

Turning to Plaintiff's claim against Defendant SUNY for monetary damages under ADA Title 2, the relevant question insofar as Eleventh Amendment immunity is concerned is whether Plaintiff has adequately stated and substantiated a claim that the Title 2 violation was motivated by discriminatory animus or ill will due to disability rising to the level of a Fourteenth Amendment violation sufficient to trigger abrogation of immunity under §5 of the Fourteenth Amendment. *Garcia, supra; Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356 (2001); *United States v. Georgia*, 546 U.S. 151, 159 (2006).

In this case, the Defendants' dismissal of Plaintiff violated both the ADA Title 2's reasonable accommodation requirement and the Due Process Clause of the Fourteenth Amendment. Had Defendants allowed Plaintiff to request a modest additional leave of absence for medical purposes, the "administrative" dismissal

13

would not have occurred.  Likewise, had Defendants permitted Plaintiff to explain why the administrative dismissal should be forestalled by an additional leave of absence, due process would have been satisfied.  Defendants' summary refusal to allow a request from Plaintiff for a post-July 28, 2007 medical leave of absence of modest duration therefore violated both Title 2 of the ADA and the Due Process Clause of the Fourteenth Amendment, and therefore sovereign immunity under the Eleventh Amendment is not available to Defendants.

## POINT IV

## PLAINTIFF'S REHABILITATION ACT §504 AND ADA TITLE 2 CLAIMS SHOULD BE REINSTATED

An ADA Title 2 plaintiff, in the employment context, "bears the burdens of both production and persuasion as to the existence of some accommodation that would allow her to perform the essential functions of her employment, including the existence of a vacant position for which she is qualified."  *McBride v. Bic Consumer Products, supra,* 583 F.3d 92, 97 (2d Cir., 2009).  Once satisfying these burdens there remains for the Title II plaintiff "only a light burden of production" as to "the reasonableness of a proposed accommodation," which "is satisfied if the costs of the accommodation do not on their face obviously exceed the benefits," and on this question of reasonableness the "burden of persuasion falls on the defendant employer."  *Ibid* at fn. 3, citing, *inter alia, Jackan v. N.Y. State Dep't of*

14

*Labor*, 205 F.3d 562, 566 (2d Cir., 2000).  While an employer is generally

obligated to engage in an "informal interactive process" with the employee to

determine an appropriate accommodation, whether the employer failed to engage

in such process is not determinative as to either plaintiff's or defendant's burdens

respecting the existence of a reasonable accommodation.  *Astrin v. Maharam*

*Fabric Corp.,*Civ. No. 11-4482 (EDNY, decided Jan. 9, 2013), citing *McElwee v.*

*County of Orange*, 700 F.3d 635, 642 (2d Cir.,. 2012).

The burden of proof for an employment discrimination plaintiff as to the

*prima facie* stage of *McDonnell-Douglas* burden-shifting analysis is "*de minimis*."

*Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir., 1994).

Substantively, Title 2 of the ADA and §504 of the Rehabilitation Act are

interpreted and applied similarly.  *Garcia v. SUNY Health Sciences Center*, 280

F.3d 98 (2d Cir., 2001).

When a person notifies his employer of a disability and requests reasonable

accommodation, it becomes the employer's obligation to make reasonable

accommodation, including affording leaves of absence.  *Graves v. Finch Pruym &*

*Co., Inc.*, 457 F.3d 181, 184-185 (2d Cir., 2006).  The notice to the employer need

not be particularly formal to trigger a duty to reasonably accommodate.  *Brady v.*

*Wal-Mart Stores, Inc.,* 531 F.3d 127, 135 (2d Cir., 2008).

15

In the case of a student, the elements of the claim are parallel to those of an employment plaintiff. The plaintiff must prove that he is handicapped, otherwise qualified to participate in the offered activity or to enjoy its benefits, that he is excluded solely by reason of his handicap, and that the program receives federal financial assistance. Once a *prima facie* case is established, the defendant must present evidence to rebut the inference of illegality. *Rothchild v. Grottenthaler,* 907 F.2d 286, 289-290 (2d Cir., 1990), quoted in *Alexander v. SUNY at Buffalo*, 932 F.Supp. 2d 437, 442 (WDNY, 2013). A plaintiff must ultimately prove deliberate indifference on a §504 claim, though this does not require proof of personal animosity or ill will. *Ibid.* at 443-444, relying on *Bartlett v. NYS Board of Law Examiners,* 156 F.3d 321, 331 (2d Cir., 1998).

In this case, Defendants have never challenged that Plaintiff has a qualifying disability or handicap and that they were informed of same on multiple occasions in the month of May, 2007. Plaintiff satisfies the "otherwise qualified" prong because the evidence shows that he sought medical treatment including anti-depressant medication, that it was effective, and that when he did sit for the Step 1 exam on the third occasion (in 2010, after dismissal from UB Med) he passed the test with flying colors. The only other question is whether or not he was dismissed from the program on account of his disability.

16

The Defendants have contended that Plaintiff was dismissed solely because he failed to sit for the Step 1 exam on or prior to July 28, 2007, which was the expiration of the one academic year plus leave of absence deadline established under the school's Academic Policies.  The District Court agreed with Defendants.

However, Plaintiff has adduced competent evidence to establish that this neutral-sounding explanation was not the real reason, and that the real reason was that Defendants refused to afford Plaintiff an additional leave of absence of approximately one month so that he could enjoy six full weeks of depression-free study in preparation for taking the Step 1 exam on his third attempt.  In early May, 2007 Dr. Lewis recommended a three month leave of absence.  Dr. Greenwood, employed by Defendant SUNY, diagnosed Plaintiff as having had major depression.  So, too, did psychiatrist Calvert Warren, M.D., also employed by Defendant SUNY.  Dr. Warren advised Defendants that Plaintiff needed a leave of time sufficient for the medication to take effect such that Plaintiff could effectively "prepare" for the Step 1 exam.  He did not specify the length, but notified Defendants that it typically takes six to eight weeks for the medication to achieve sufficient therapeutic effect.  This, coupled with the standard six to eight week study leave of absence afforded to every UB Med student on every attempt at taking the Step 1 exam (verified by faculty member Dr. Hoover's declaration and by the Academic Status Policies themselves), made it impossible for the

17

medication to achieve its therapeutic effect, and for Plaintiff to then have a minimum six week minimum period of time to prepare for the Step 1 exam, all before July 28, 2007. Defendants knew this was the case, because these simple calculations necessarily flow from what Dr. Warren expressly informed Defendants, which was consistent with and substantiated by Drs. Lewis and Greenwood.

As documented above, Defendants Cain and Nielsen advised Plaintiff on May 16, 2007 that under no circumstances would he be allowed to take the Step 1 exam after May 31, 2007. As also documented above, Dr. Nielsen chided the Leave of Absence Committee for entertaining Plaintiff's May 21, 2007 request. The Leave of Absence Committee recommendation was to afford Plaintiff six weeks for the medication to become therapeutic in order for him to take the Step 1 exam, but that no time be afforded for Plaintiff to study for the Step 1 exam after the medication reached therapeutic effectiveness; furthermore, it pre-dated the letter report of Calvert Warren, M.D., a psychiatrist who was therefore a specialist in the field. Dr. Cain's June 7, 2007 letter expressly foreclosed consideration of any further extension irrespective of Plaintiff's rate of medical progress. Dr. Nielsen brushed aside Dr. Francis's July, 2007 request for additional leave time to study, notifying Plaintiff that the July 28, 2007 deadline was absolute. The disability discrimination as setting the deadline at July 28, 2007, instead of a later

18

date, for example, August 31, 2007, which is the date that Plaintiff actually

registered for to take the Step 1 exam.

## POINT V

### PLAINTIFF'S FOURTEENTH AMENDMENT PROPERTY INTEREST-BASED PROCEDURAL DUE PROCESS CLAIM SHOULD BE REINSTATED

The Complaint's Third Claim For Relief alleges deprivation of procedural

due process.  A25-A27.  Paragraphs 123 through 126 of the Complaint allege that

an implied contract exists between a student (such as Plaintiff) and UB Med, that

constitutes a property interest protected by the Fourteenth Amendment.  A25-A26.

Paragraphs 127 through 131 go on to allege that Defendants' dismissal of

Plaintiff has so stigmatized Plaintiff that it deprived him of a liberty interest also

protected by the Due Process Clause of the Fourteenth Amendment.  A26.

Thus, the words and structure of the Complaint's allegations made it clear

that Plaintiff was alleging a lack of procedural due process as required by the

Fourteenth Amendment resulting in deprivation of both a property interest and a

liberty interest.

When moving for summary judgment, Defendants' supporting memorandum

of law, Point V, pp. 9-14 (Document 25 on the District Court docket) placed in

issue whether Plaintiff had established a liberty interest protected by the Due

Process Clause.  No argument was made as to whether Plaintiff had established the

existence of a property interest.  The District Court's Decision noted that Plaintiff was not contesting Defendants' motion insofar as it targeted Plaintiff's liberty interest-based due process claim.  SA, note 6.  The Court found it unnecessary to reach the question of whether Plaintiff had a constitutionally-protected property interest.  SA15.  It should be noted that Defendants did not place the question of the existence of a property interest in dispute.

Nevertheless, the law is clear that Plaintiff had a property interest in the continuation of his education at the University at Buffalo, which is part of the State University of New York system.  This is because New York law recognizes an implied contract between SUNY and its students that constitutes a property interest entitled to constitutional protection including the procedural and substantive protections of the Fourteenth Amendment.  *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir., 1991), relying on *Olsson v. Board of Higher Education*, 49 NY2d 408, 414 (1980); *see also Holmes v. Poskanzer*, 2007 U.S. Dist. LEXIS 3216 at *10-*11 (NDNY, decided January 3, 2007).  Given that Plaintiff held a property interest in continued enrollment at UB Med, the question becomes whether Plaintiff received the process he was constitutionally due.

The District Court held that under the academic deference standard adopted by the Supreme Court in *Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78 (1978), applicable in the case of academic dismissal, due process

requires only 1) that the school makes the student aware of its dissatisfaction or of its expectations for student progress with notice as to the possible impact (without improvement) on continued enrollment and 2) that the school's ultimate decision to dismiss is careful and deliberate.  The District Court then held, in substance, that Plaintiff had been repeatedly notified that timely passage of the USMLE Step 1 exam was a prerequisite to promotion to year 3, that failure would result in dismissal from the program, that Plaintiff had received from Defendants "multiple grants of study leave, and the grant of medical leave," that Defendant Nielsen had been in continuous communication with Plaintiff regarding program requirements, and that Defendants had manifested care and deliberateness passing constitutional muster.  SA17.  In support of its findings, the District Court noted that Plaintiff's "dismissal, though academic in nature, was more ministerial than evaluative," and that Plaintiff "simply failed to do what was required of all students in order to progress to the next phase of the program."

Post-*Horowitz* federal courts generally divide student's procedural due process claims into the categories "academic" or "misconduct."  Academic dismissals, under the *Horowitz* precedent, are relaxed and are of the type described by the District Court and paraphrased above.  Dismissals based on misconduct must meet more rigorous due process standards, generally including a rather formal hearing.

21

The *Horowitz* decision was based on the standard of academic deference, i.e., deference to the First Amendment-based academic freedom afforded college and university faculty. These principles were echoed in *University of Michigan v. Ewing*, 474 U.S. 214, wherein the Supreme Court held that in the case of an academic dismissal due process had been afforded when the record unmistakably demonstrates that the faculty's decision was made conscientiously and with careful deliberation, based on an evaluation of the entirety of the student's academic career, and in the exercise of professional judgment. 474 U.S. 214 at 226. Thus, the Supreme Court held that in the case of "a genuinely academic decision" it may not be overridden "unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Ibid,* citing *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982).

Plaintiff does not contend that he was dismissed for misconduct. By the same token, Plaintiff asks this Court to distinguish between the dismissal in this case – irrespective of whether it can be labeled as an academic dismissal – and the kind of academic dismissal described in the *Horowitz* and *Ewing* precedents.

There are three reasons why such a distinction is warranted. The *Horowitz* academic deference standard applies when the decision is genuinely academic in nature: it does not apply when the decision is motivated by bad faith or ill will

unrelated to academic performance. *Clements v. County of Nassau*, 835 F.2d 1000, 1004-1005 (2d Cir., 1987), citing *Ikpeazu v. University of Nebraska*, 775 F.2d 250, 253 (8th Cir., 1985) (*per curiam*). Second, the *Clements* Court, agreeing with the *Wakefield* Court, held "that summary judgment is usually unwarranted when state of mind is at issue." No matter how vigorously Defendants contend that their dismissal of Plaintiff was administrative or automatic, it is Plaintiff's position that Defendants caused his dismissal in knowing and/or reckless disregard of his rights to a reasonable accommodation in the form of a modestly longer medical leave of absence for the purpose of studying for his third and final attempt to pass the USMLE Step 1 exam. If Plaintiff is right, that would show bad faith, altogether removing this case from the relaxed due process standards applicable in genuine academic dismissal cases.

The second reason is that the dismissal was handled as automatic and therefore without the exercise of professional judgment and discretion. Defendant Nielsen's August 15, 2007 correspondence advised Plaintiff that he was "administratively dismissed . . ." A315. Defendant Nielsen elaborated on this in her e-mail exchange with the National Board of Medical Examiners (which administers the USMLE Step 1 exam) for the purpose of defeating Plaintiff's request for a refund of the fee he had paid to take the USMLE exam. This exchange occurred on August 29 & 30, 2007. A317-319. According to Dr.

23

Nielsen, prior to July 28, 2007, "Dr. Francis who runs the PASS board prep

program in Champaign, IL" asked that additional time beyond July 28, 2007 be

furnished to Plaintiff to prepare for the exam, that neither she nor anyone else in

the Dean's office returned the call, and instead that she notified Plaintiff via e-mail

that Defendants would not communicate with anyone other than himself "and that

the deadline of 7/28 was final."  She went on to state that his dismissal was based

on "his failure to sit for the final attempt at Step 1 by the July 28, 2007 deadline."

A317-318.  She stated that Plaintiff ". . . knew, however, that his final deadline to

sit for Step 1 was July 28, 2007, and that no further extensions for any reason

would be granted."  A318.  She also stated that "[t]he dismissal was automatic,

because he missed the July 28, 2007 [*sic*] for his final re-take of Step 1. . .," so that

he was dismissed effective July 29, 2007.  A319.

By Defendants' own admission, the dismissal was "automatic."  Likewise,

by admission, Defendants acknowledge that the request of Dr. Francis on behalf of

Plaintiff for an additional medical leave was summarily rejected on the basis of the

Dean's earlier decision that no extensions of the leave would be granted under any

circumstances or for any reason.

These facts show that the Defendants' dismissal was not in the exercise of

professional judgment.  The academic deference standard established in *Horowitz*

and applied in *Ewing* applies to protect the exercise of professional judgment to

24

protect academic freedom.  The District Court described the dismissal as ministerial, while Defendants characterized it as administrative and automatic. Whichever descriptor is used, any claim Defendants might make that the dismissal was made through the exercise of professional judgment so as to trigger the *Horowitz* academic deference standard is illogical and unsupportable.

Thus, in order to invoke the *Horowitz* standard, Defendants would have to demonstrate that Plaintiff was afforded due process during the period leading up to the June 7, 2007 decision of Dean Cain that dismissal would irrevocably result if the exam was not taken and passed by July 28, 2007.

However, it is Plaintiff's position that the events after June 7, 2007 are significant.  It is clear that Defendants had irrevocably decided that no additional leave of absence (which Defendants labeled "extension") would be afforded.  In other words, Defendants, no later than June 7, 2007, had decided that no matter what Plaintiff's medical condition was after that date, no additional leave of absence or "extension" to sit for the Step 1 exam would be granted.

This violated Plaintiff's due process rights because there was inherent uncertainty as to when Plaintiff's medication would become sufficiently efficacious that he could properly study and prepare to take the Step 1 exam.  Thus, psychiatrist Calvert Warren, M.D., reported to Defendants by May 31, 2007 letter-report that the "currently accepted timeframe for anti-depressant clinical trials is 6

to 8 weeks" and that he "supported the idea of a leave of absence for Mr. Dean to allow the treatment interventions for major depression to become effective." A308-A309.  Indeed, it was not until July 21, 2007, 9 weeks and 1 day after commencing taking the prescribed anti-depressant medication, that Plaintiff first felt virtually free of depression and was able to dedicate himself to his study preparation for the Step 1 exam; prior to July 21 the Lexapro was only partially effective and hence Plaintiff was unable to effectively study for the Step 1 exam. A243.

Defendant Cain's June 7, 2007 decision unqualifiedly rejected any possibility of an additional leave of absence ("extension") past July 28, 2007. Thus, there was no effective possibility of give and take between Plaintiff and Defendants after that date.  There was no exercise of professional judgment on Defendants' part after that date.  Because it was of critical importance for Plaintiff to regain ability to effectively study for the Step 1 exam, his medical status after June 7, 2007 was relevant.  Prior to June 7, the date on which Plaintiff would become able to effectively study could be projected on only an approximate basis, and even that projected date would leave Plaintiff without six weeks ability to effectively study for the Step 1 exam.  Due process, Plaintiff submits, required that Defendants consider Plaintiff's progress in medical recovery after June 7, 2007. Defendants expressly refused to do so, foreclosing the adaptation of a medical

26

leave of absence to Plaintiff's actual medical condition.  This is the basis for Plaintiff's procedural due process claim.

The Defendants have contended that Plaintiff could have appealed his dismissal because the August 15, 2007 letter that Defendant Nielsen sent him notified him that he had rights to appeal under the Academic Status Policies. There are two reasons why this argument fails.  First, by way of June 7, 2007 correspondence, Dr. Cain had notified Plaintiff that the July 28, 2007 deadline was absolute and would not be extended for any reason.  Presumably, the appeal to which Dr. Nielsen referred was from Dr. Cain's decision to Dr. Cain.  An appeal, to be effective, needs to be to a higher authority.

The second reason why Dr. Nielsen's assertion as to the existence of appeal rights rings hollow is that the Academic Status Policies provide no such appeal process.  The Academic Status Policies provide that students "who fail the examination three times will be administratively dismissed. . . [and] will have the right to appeal this decision to the Dean."  This must be the appeal provision to which Dr. Nielsen referred in her August 15, 2007 correspondence, because the only other right to appeal conferred by the Academic Status Policies is on its face inapplicable.  A264-265.  The appeal right to which Dr. Nielsen presumably referred appears in the Record at A270.  However, it, too, is inapplicable because it applies to students who "fail" the Step 1 exam three times: Plaintiff did not fail the

Step 1 exam three times. Plaintiff had no meaningful right to appeal Dr. Cain's

final determination that failure to take the Step 1 exam on or before July 28, 2007

would irrevocably result in dismissal, by way of appeal to Dr. Cain. Hence, Dr.

Nielsen's claimed right of appeal is a red herring.

## CONCLUSION

For the above reasons, Plaintiff respectfully requests that the Court modify

the Judgment of the District Court insofar as it dismissed Plaintiff's First, Second

and Third Claims For Relief.


DATED: July 17, 2014


/s/David J. Seeger, Esq.
DAVID J. SEEGER, ESQ.
*Attorney for Appellant*
69 Delaware Avenue, Suite 1100
Buffalo, New York  14202
716-856-1536
davidjseegerpc@gmail.com

28

CERTIFICATION PURSUANT TO
Fed. R. App. P. 32(a)(7)(B) and (C)

The undersigned hereby certifies that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and (C) because the brief contains 6,238 words of text.

The brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and the type style requirements of Fed.R.App.P.32(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word 2003, Times New Roman, Size 14.

Dated: July 18, 2014

_____/s/_____
David  J. Seeger

*db*